**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

|  |  |
|---|---|
| AMERIPRISE FINANCIAL SERVICES, INC. and SECURITIES AMERICA, INC., | ) ) ) ) |
|  | ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| THE RESERVE FUND; RESERVE MANAGEMENT COMPANY, INC.; and BRUCE R. BENT, | ) ) ) |
| Defendants. |  |

Civil No. 08 CV 5219 PAM/JJK

**VERIFIED COMPLAINT**

**VERIFIED COMPLAINT**

**THE PARTIES**

1.     Ameriprise Financial Services, Inc. ("Ameriprise") is a registered broker-dealer and wholly-owned subsidiary of Ameriprise Financial, Inc. It is organized under the laws of Delaware with a principal place of business in Minneapolis, Minnesota.

2.     Securities America, Inc. ("SAI") is a registered broker-dealer and wholly-owned subsidiary of Ameriprise Financial, Inc.. It is organized under the laws of Delaware with a principal place of business in La Vista, Nebraska.

3.     The Reserve Fund is a Massachusetts business trust that is an open-end management investment company (the "Trust") registered with the Securities and Exchange Commission (the "SEC") under the Investment Company Act of 1940 (the "Investment Company Act"). The Trust has a principal place of business at 1250 Broadway, New York, New York, 10001.

SCANNED
SEP 19 2008
U.S. DISTRICT COURT MPLS

4.      Reserve Management Company, Inc. ("RMCI") is the investment adviser to the Trust. RMCI has its headquarters and principal place of business in New York, New York.

5.      Bruce R. Bent at all material times has been the Chairman and President of the Trust. Mr. Bent has a principal place of business at 1250 Broadway, New York, New York, 10001.

6.      Additional officers of the Trust and RMCI with significant roles in RMCI's management of the Primary Fund include the following: Bruce R. Bent II, Arthur T. Bent III, Catherine Crowley, Patrick J. Farrell, and Christina Massaro.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as certain of plaintiffs' claims arise under the federal securities law of the United States.

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties, and the amount in controversy as to each plaintiff exceeds $75,000, exclusive of interest and costs.

9.      Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to plaintiffs' claims occurred in this district.

## THE FACTS

10.      The Reserve Primary Fund (the "Primary Fund") is a money market mutual fund organized as a series of the Trust. The Primary Fund has a stated investment objective of investing in high quality, short term securities so as to maintain a net asset value of $1.00 per share. As of the close of business on Friday, September 12, 2008, the Primary Fund had approximately $64 billion of assets under management, of which approximately $1.2 billion

were assets invested by Ameriprise in the Primary Fund on behalf of more than 150,000 Ameriprise client accounts.

11.     In addition to the $1.2 billion of client assets invested in the Primary Fund, Ameriprise also had invested as of September 12, 2008 approximately $25 million of its own capital. This amount had increased to approximately $100 million as of the close of business on Tuesday, September 16, 2008.

12.     As of the close of business on Friday, September 12, 2008, approximately $2 billion of the assets under management in the Primary Fund were assets invested by SAI in the Primary Fund on behalf of more than 175,000 SAI client accounts. In addition, SAI also had invested approximately $28 million of its own capital in the Primary Fund.

13.     On the morning of Monday, September 15, 2008, the Trust and its agents secretly notified a number of major institutional investors (the "institutional investors") in the Primary Fund that the Primary Fund had material exposure to securities issued by Lehman Brothers Holdings, Inc. ("Lehman"), which had that morning declared its intention to file for Chapter 11 bankruptcy. The Trust and its agents informed these institutional investors that Lehman's bankruptcy would have severe negative consequences on the value of the Primary Fund's portfolio.

14.     The institutional investors were thus secretly warned that the Primary Fund was at serious risk of "breaking the buck" (*i.e.*, its net asset value falling below $1 per share) because of its exposure to Lehman securities.

15.     In response to the secret "tip" from the Trust and its agents, plaintiffs believe and therefore aver that the institutional investors immediately submitted redemption requests to redeem their assets from the Primary Fund at the then-prevailing net asset value of $1 per share.

All told, the institutional investors, whose identities are not known to plaintiffs at the present time, purported to redeem as much as approximately $41 billion of the Primary Fund's $64 billion under management at a redemption price of $1 per share. Plaintiffs believe and therefore aver that these redemption requests, in whole or in part, are still in the process of being processed and the proceeds have not yet been paid.

16. On Tuesday, September 16, 2008 at approximately 2:00 p.m. Eastern time, the Trust issued a public announcement, a copy of which is appended hereto as Exhibit A, stating in material part as follows:

> The Board of Trustees of the Reserve Fund, after reviewing the unprecedented market events of the past several days and their impact on The Primary Fund, a series of The Reserve Fund and taking into account recommendations made by [RMCI], the investment manager of the Primary Fund, approved the following actions with respect to The Primary Fund only:
>
> The value of the debt securities issued by Lehman Brothers Holdings, Inc. (face value $785 million) and held by the Primary Fund has been valued at zero effective as of 4:00PM New York time today. As a result, the NAV of the Primary Fund, effective as of 4:00PM, is $0.97 per share. All redemption requests received prior to 3:00PM today will be redeemed at a net asset value of $1.00 per share.

17. The public announcement on September 16, 2008 was the first communication that plaintiffs received that the Primary Fund had broken or was on the verge of "breaking the buck." Because plaintiffs do not have discretion over their clients' accounts, plaintiffs were not able to submit redemption requests for its $1.2 billion under management on such short notice (*i.e.*, the one-hour window provided under the Trust's public announcement). Further, because of their perceived duties to their clients, plaintiffs did not submit redemption requests for their own $128 million-plus in the Primary Fund.

18. On Thursday, September 18, 2008 various Ameriprise employees spoke by telephone with RMCI's Chief Investment Officer, Patrick R. Ledford, as well as John Drahzal,

Managing Director and Global Head of Sales for RMCI. Messrs. Ledford and Drahzal explained that the Trust had previously tipped the institutional investors about the Fund's likelihood of breaking the buck, and seemed surprised that Ameriprise had not also been tipped at the same time (it was not).

19.     After the conversation with Messrs. Ledford and Drahzal, plaintiffs submitted redemption requests to the Primary Fund to redeem all their clients' funds and plaintiffs' own funds from the Primary Fund. However, the Primary Fund's net asset value had by then fallen further to approximately $0.95 per share, and any redemptions at this point may well bring substantially less. Plaintiffs' redemption requests have not yet been processed.

## COUNT I
## Violations of Section 11 of the Securities Act

20.     Plaintiffs repeat and reallege the allegations contained in paragraph 1 - 19 above.

21.     Shares of the Primary Fund were sold pursuant to a Registration Statement filed by the Trust with the United States Securities and Exchange Commission. Mr. Bent, among others, signed the Registration Statement.

22.     The Registration Statement was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein. For example, the Registration Statement set forth share redemption procedures that in no way resembled the actions taken by the Trust and its agents on or about September 15, 2008, and nowhere disclosed to shareholders that large institutional investors would be made aware of material nonpublic information via secret "tips".

23. The Trust is the registrant for the shares of the Primary Fund, and as such is strictly liable for the false statements contained in the Registration Statement. The defendants named herein were responsible for the contents and dissemination of the Registration Statement.

24. None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

25. By reasons of the conduct alleged, each defendant violated, and/or controlled a person who violated, Section 11 of the Securities Act.

26. Plaintiffs have been irreparably damaged by defendants' actions in a manner that cannot be fully known or compensated by monetary damages. Indeed, plaintiffs believe and therefore aver that defendants do not have even approximately the assets that would be necessary to reimburse plaintiffs and the other non-tipped investors for their investment losses.

## COUNT II
## Violation of Section 10(b) of the Exchange Act

27. Plaintiffs repeat and reallege the allegations contained in paragraph 1 - 26 above.

28. The Trust and its agents' secret communications to the institutional investors about the Primary Fund's exposure to Lehman securities was in violation of Federal securities law, including section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder.

29. Among other things, the institutional investors who were tipped and who then submitted redemption requests would not only front run other investors and receive $1.00 per share, but also their redemptions from the Primary Fund would result in the most liquid securities in the Primary Fund being sold to generate sufficient proceeds to meet their redemption requests. That would leave the more illiquid and financially precarious securities in the Primary Fund

(including the securities issued by Lehman) to those remaining in the Primary Fund, including plaintiffs, who had not been tipped.

30.     Plaintiffs have been irreparably damaged by defendants' actions in a manner that cannot be fully known or compensated by monetary damages. Indeed, plaintiffs believe and therefore aver that defendants do not have even approximately the assets that would be necessary to reimburse plaintiffs and the other non-tipped investors for their investment losses.

## COUNT III
## Breach of Fiduciary Duty

31.     Plaintiffs repeat and reallege the allegations contained in paragraph 1 - 30 above.

32.     RMCI, the Trust and Mr. Bent all owed fiduciary duties to all shareholders of the Primary Fund, including a duty of loyalty.

33.     The actions of RMCI, the Trust and Mr. Bent and their agents in tipping the Primary Fund's large institutional investors regarding the fund's substantial exposure to Lehman securities and the likelihood of the fund's "breaking the buck" was to the great detriment of plaintiffs and the other non-tipped shareholders. These actions were in breach of the duty of loyalty owed to plaintiffs and the other non-tipped shareholders.

34.     Plaintiffs have been irreparably damaged by defendants' actions in a manner that cannot be fully known or compensated by monetary damages. Indeed, plaintiffs believe and therefore aver that defendants do not have even approximately the assets that would be necessary to reimburse plaintiffs and the other non-tipped investors for their investment losses.

Wherefore, plaintiffs hereby pray for the following relief:

1.     A temporary restraining order against defendants and each of them, restraining them or their agents from taking any and all actions to honor redemption requests to the Primary

Fund and ordering them to notify the transfer agent, custodian, and other relevant agents to so refrain;

2.     A preliminary injunction enjoining defendants and each of them, by themselves or through their agents, from further processing, redeeming or paying any redemption requests to the Primary Fund;

3.     An expedited trial on the merits, consolidated pursuant to Rule 65(c) with the hearing on the preliminary injunction;

4.     After trial, an order requiring the defendants and each of them to liquidate the Primary Fund in a fair and equitable manner that maximizes returns for each investor, including plaintiffs, and treats each investor equally;

5.     To the extent that the tipped institutional funds' redemption requests have already been paid, monetary damages awarded to plaintiffs in an amount to be determined;

6.     Such other and further relief as to the Court shall seem meet and proper.

FAEGRE & BENSON LLP

Dated: September 19, 2008

Will Stute (# 0279663)
Michael M. Krauss (# 0342002)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Telephone: (612) 766-7000
Facsimile: (612) 766-1600

**Attorneys for Plaintiffs Ameriprise Financial
Services, Inc. and Securities America, Inc.**

Harvey J. Wolkoff, *pro hac vice applicant*
Robert A. Skinner, *pro hac vice applicant*
Ropes & Gray LLP
One International Place
Boston, Massachusetts 02110
Telephone: (617) 951-7000
Facsimile: (617) 854-0434

## **VERIFICATION**

The foregoing is true and accurate to the best knowledge and belief of the undersigned.

Signed to under the pains and penalties of perjury.

John C. Junek



UNITED STATES | ENGLAND | GERMANY | CHINA



MICHAEL DOTY
ASSOCIATE
MDoty@faegre.com
(612) 766-6998

September 19, 2008

**VIA MESSENGER**

Court Administrator
Hennepin County District Court
Hennepin County Government Center
300 South Sixth Street
Minneapolis, MN  55487

> **Re:** **Ameriprise Financial Services, Inc. and Securities America, Inc. v. The Reserve Fund; Reserve Management Company, Inc.; and Bruce R. Bent**

Dear Court Administrator:

Enclosed herewith for filing please find the following:

1.  Civil Cover Sheet;

2.  Verified Complaint;

3.  Pro hac vice motion – Robert Sinner;

4.  Pro hac vice motion – Harvey J. Wolkoff; and

5.  Three filing fee checks:  $350.00, $100.00 and $100.00.

Very truly yours,

FAEGRE & BENSON LLP

Michael Doty

Enclosures
fb.us.3274208.01